AO 91 (Rev. 11/11)  Criminal Complaint

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

DEC 0 4 2025

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Leonel Jaquez-Martinez | ) | Case No.  25-MJ-5014 |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  July 8, 2025 and December 3, 2025  in the county of  Lea  in the

_____  District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Attempted Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine |
| 8 USC § 1326(a)(1),(2) | Re-entry of a Removed Alien |
| 18 USC § 922(g)(5)(A) | Illegal Alien in Possesion of a Firearm |

This criminal complaint is based on these facts:

See Attachment A

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Bianca Mease, HSI Special Agent
*Printed name and title*

Electronically submitted and telephonically sworn to before me.

Date: _____12/03/2025_____

_____
*Judge's signature*

City and state: _____Roswell, New Mexico_____

Barbara S. Evans US Magistrate Judge
*Printed name and title*

## Attachment A

### United States of America
### V.
### Leonel Jaquez-Martinez

I, Bianca Maese, being duly sworn, depose and state that:

1.  Homeland Security Investigation (HSI) and Drug Enforcement Administration (DEA) Special Agents and other law enforcement officers (collectively, "agents") are currently investigating a Drug Trafficking Organization (DTO) which operates in New Mexico, Texas, and elsewhere that distributes methamphetamine, cocaine, and fentanyl. Leonel Jaquez-Martinez and Raul Navarrette are two of the members of the DTO. The communications described below were intercepted pursuant to wiretap orders signed by U.S. District Judge Margaret I. Strickland in the District of New Mexico over telephones used by Raul Navarrette (Target Telephone 1) and Leonel Jaquez-Martinez (Target Telephone 4).

2.  Prior to July 8, 2025, an undercover agent (UC2) had made arrangements with Raul Navarrette to purchase three pounds of methamphetamine for $9,500. On July 8, 2025, at approximately 2:20 p.m., UC2 went to the Raul Navarrette's ranch to complete the purchase. On that date, UC2 drove up to the front of Raul Navarrette's trailer and met with Raul Navarrette, who then provided him with 421.3 net grams of pure methamphetamine. Raul Navarrette then stated he needed some time to obtain the other two pounds of methamphetamine and told UC2 to come back later that day.

3.  After UC2 left, at approximately 4:00 p.m., on July 8, 2025, Defendant, using Target Telephone 4, called Raul Navarrette, using Target Telephone 1 (Session 590 on Target Telephone 1). During the call, the following ensued: Raul Navarrette called

Defendant, and Defendant told Raul Navarrette "zero. America." Raul Navarrette then said "And then? What is it with the, those?" Defendant later responded that he would call him, and Raul Navarrette replied "They already… Here is for… At least two right now, right now." Defendant replied, "you got it."

4.  Based on my training and experience, I believe Defendant was coordinating to obtain the two pounds of methamphetamine from a third party and provide it to Raul Navarrette so that Raul Navarrette could sell the methamphetamine to UC2. When Raul Navarrette stated, "And then? What is it with the, those?," I believe that Raul Navarrette was asking the status of the two pounds of methamphetamine that Raul Navarrette was attempting to buy in order to sell them to UC2. I believe that when Defendant stated, "Let me call him," Defendant was telling Raul Navarrette that Defendant was going to call his source of supply to obtain the methamphetamine. When Raul Navarrette stated, "They already…Here is for… At least two right now, right now," I believe he was stating that UC2 was already in Hobbs, New Mexico, and was waiting of the two pounds of methamphetamine.

5.  On the same day, at approximately 4:31 p.m., Raul Navarrette, using Target Telephone 1, called Defendant, using Target Telephone 4 (Session 593 on Target Telephone 1). During the call, the following ensued: Raul Navarrette asked Defendant "will it happen or not," Defendant replied "yes." Raul Navarrette then asked, "Right now, right now?" and Defendant replied with "Mm-hmm." Raul Navarrette then said, "Alright, then. Yeah, because they're waiting on me."

6.  Based on my training and experience, I believe Raul Navarrette was calling Defendant to ask about the two pounds of methamphetamine that Raul Navarrette had

previously spoken to Defendant about. When Raul Navarrette stated, "Will it happen or not?," I believe that he was asking if Defendant was going to be able to provide the two pounds of methamphetamine. I believe when Defendant stated, "Yes," he was confirming that Defendant was going to be able to provide the methamphetamine. Additionally, I believe when Raul Navarrette stated, "Alright, then. Yeah, because they're waiting on me," he was telling Defendant that UC2 was waiting for the methamphetamine.

7. Shortly after that intercepted call, agents were conducting surveillance at the Navarrette Ranch. At approximately 5:53 p.m., agents observed a dark blue Chevrolet Tahoe with a registration address of 1210 E. Main Street, Hobbs, New Mexico, which I know to be Defendant's residence.

8. Shortly thereafter, UC2 went back to the Navarrette Ranch, and Raul Navarrette sold approximately two pounds of methamphetamine to UC2. Based on my training and experience, I believe that Defendant delivered the two pounds of methamphetamine to Raul Navarrette, who then sold the methamphetamine to UC2.

9. On December 3, 2025, HSI agents executed a search warrant at 1210 E. Main Street, Hobbs, New Mexico, where Defendant was residing. During execution of the search warrant, agents encountered Defendant near the front door. Defendant was questioned and stated that he had a firearm in the bathroom in a drawer of the residence. Defendant stated that he had a firearm for his protection. Agents then searched the home and found a .22 Ruger MK II with a loaded magazine in a drawer in the bathroom. Agents further found Defendant's wallet with his New Mexico drivers license in that same drawer.

10. Defendant read his *Miranda* rights and agreed to speak with agents. Defendant stated that on July 8, 2025, he spoke with Raul Navarrette and Raul Navarrette asked him to find one pound of methamphetamine. Defendant admitted that he agreed to try and find the pound of methamphetamine for Raul Navarrette. Defendant stated that Raul Navarrette then gave him $1,600 for the one pound of methamphetamine and an additional $200 for Defendant as compensation for his work in locating the methamphetamine. Defendant stated that he then attempted to contact his source of supply to locate the one pound of methamphetamine but claimed that he was ultimately unable to get in contact with the source of supply and claimed that he returned the money to Raul Navarrette.

11. During the interview, Defendant admitted that, toward the end of July 2025, Defendant sold two ounces of methamphetamine to Raul Navarrette for $500. Defendant also admitted that he was in the country illegally. He admitted that he had been previously deported and returned to the United States anyway.

12. Immigration record checks show that Defendant is a citizen and national of Mexico with no legal authorization to enter or remain in the United States. Records further show that Defendant was deported from the United States on February 11, 2025.

13. Record checks show that Defendant has not applied to the appropriate authority of the United States for permission to carry firearms in the United States nor does he have any immigration petitions pending on his behalf that would grant him status or allow him to carry firearms.

14. Based on my training and experience and in consultation with other agents, I know that Ruger firearms are not manufactured in the state of New Mexico and that,

therefore, before Defendant possessed the Ruger, it had traveled in interstate commerce.

15. Based upon the above information, I believe probable cause exists that Leonel Jaquez-Martinez has violated 21 U.S.C. § 846, 8 USC § 1326(a)(1),(2), and 18 USC § 922(g)(5)(A).

_____
HSI Special Agent Bianca Mease


Sworn to and signed before me by telephonic or other reliable electronic means before me this 4th day of December, 2025.

_____
Barbara S. Evans
United States Magistrate Judge